Filed 5/26/26  In re D.E. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| In re D.E. et al., Persons Coming Under Juvenile Court Law. | B350179 (Los Angeles County Super. Ct. Nos. 20CCJP01671E–K) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>R.E.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Jamie A. Moran under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## I. INTRODUCTION

R.E., father of seven children (the children), appeals from the juvenile court's order terminating parental rights to all the children pursuant to Welfare and Institutions Code section 366.26.[1]  Father claims the juvenile court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with their duties under the federal Indian Child Welfare Act of 1978 (ICWA, 25 U.S.C. § 1901 et seq.) and related state statutes (§ 224 et seq.).  We affirm.

## II. BACKGROUND[2]

On June 14, 2022, the Department filed and the juvenile court granted an application for a removal order alleging father's six[3] children were at risk of harm.  In its June 16, 2022, detention report, the Department stated, "[ICWA] does not apply" based on the parent's ICWA-020 forms, which stated they had no Indian ancestry.  At the June 17, 2022, detention hearing, the

_____

[1]    All statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

court questioned the children's paternal great-aunt Z.E. and paternal aunt C.M. as to their possible Indian heritage. C.M. answered that she did not know and Z.E. answered, "I don't have any."

On July 20, 2022, the social worker inquired of maternal grandmother H.E., maternal aunt L.E., paternal aunt La.E. and paternal great-aunt Z.E. All denied Indian heritage.

After the youngest child was born, the juvenile court held a detention hearing for him on September 27, 2022. The court appointed counsel for the child stated the court "[did] not have a reason to know that [the child] [wa]s an Indian Child …." The court further ordered the parents to "keep the Department, their [a]ttorney and the [c]ourt aware of any new information relating to possible ICWA status." The court accepted mother and father's ICWA-020 forms for the new child. They each indicated they did not have Indian ancestry.

On October 21, 2022, the Department filed its amended dependency petition.

In its December 6, 2023, status review report, the Department reported that it had interviewed mother on November 7, 2023, and she had again denied Indian heritage, tribal membership, affiliation, or residence.

---

[2]     Father's motion to augment the record is granted. Because the sole issue father raises on appeal concerns the compliance of the juvenile court and the Department with ICWA and related state statutes, we limit our recitation of facts to those relevant to that compliance issue except as is necessary for context.

[3]     At the time of the removal, there were six children. A seventh child was born on September 7, 2022.

At the March 6, 2024, progress hearing, paternal aunt E.E. was present in court with mother and father and they "all den[ied] Native American Heritage." The court found no reason to believe ICWA applied."

On June 14, 2024, paternal aunt C.M. and paternal great-aunt Z.E. were present for a judicial review hearing and both stated there was no Indian heritage.

In its September 13, 2024, status review report, the Department advised that it had interviewed mother and father on August 13, 2024, and they both denied Indian heritage, tribal membership, affiliation, or residence.

On January 27, 2025, the social worker spoke with the maternal grandfather R.C. by telephone to discuss the monitored visits between mother and the children. The record is silent on whether the social worker asked about maternal grandfather's Indian heritage.

In its May 30, 2025, section 366.26 report, the Department reported speaking to six additional relatives regarding Indian ancestry: paternal aunts B.C., Me.F., and Ma.F., paternal uncles V.R. and M.M., and paternal grandmother J.R. All denied knowledge of Indian heritage. The Department included a table illustrating the 15 persons (13 family members, one teacher, and one psychotherapist) that had been contacted to obtain information regarding Indian heritage for the family, the date on which the person was contacted, and their response. All denied knowledge of Indian heritage.

At the section 366.26 hearing on October 1, 2025, the juvenile court conducted an ICWA inquiry of each of the

4

numerous relatives present, starting with father.[4]  Paternal great-grandmother I.S. was present.  She told the court "[t]he children are my great-grandchildren, and I am . . . father's grandmother."  She answered, "No" when asked by the court, "Is there any information that you've not previously disclosed concerning Native American [Indian] ancestry in your family?"

That same day, after finding there was no reason to know that ICWA applied, the juvenile court found the children adoptable by clear and convincing evidence and terminated parental rights.

Father filed a timely notice of appeal.

## III.  DISCUSSION

Father contends that we must conditionally reverse the order terminating parental rights because the Department failed to comply with ICWA when it did not ask the children's grandfathers if either had reason to believe they might have Indian heritage.  We disagree.

A.  *Inquiry Duties Under ICWA*

ICWA was enacted "out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies,'" and "aims to keep Indian children connected to

---

[4]  The court inquired of father, mother, maternal grandmother H.E., paternal great-grandmother I.S., maternal great-aunt Z.E., paternal grandmother J.R., and paternal aunt La.E.  No one reported any new information regarding Indian heritage.

Indian families." (*Haaland v. Brackeen* (2023) 599 U.S. 255, 265.) To that end, under ICWA and the corresponding statutes the California Legislature enacted to implement it (§§ 224–224.7), a juvenile court and the Department have duties aimed at assessing whether a child in a dependency action is an "Indian child"—that is, a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal law definition]; see also *id.*, §§ 224.2, 224.3.) As relevant here, the Department has an ongoing and affirmative duty "to inquire whether a child is an Indian child," which includes the duty to ask "extended family members" "whether th[e] child is or may be an Indian child." (§ 224.2, subds. (a) & (b)(1).) Our Supreme Court has acknowledged that this duty of initial inquiry does not require interviewing "every" extended family member; rather, where the juvenile court's finding that the Department conducted an adequate inquiry and that ICWA does not apply is "supported by sufficient evidence," conditional reversal is not required "even if the agency did not inquire of everyone who has an interest in the child." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140–1141.) The juvenile court's finding that an ICWA inquiry is adequate is "'a quintessentially discretionary function'" that is "subject to a deferential standard of review." (*Id.* at p. 1141.)

B.    *Maternal Grandfather*

It is undisputed that the Department failed to report making an ICWA inquiry of maternal grandfather when it contacted him on January 27, 2025.

6

We recently addressed a substantially similar question: "Is a finding that an initial inquiry was adequate supported by substantive evidence when the agency inquires of the parents and seven extended family members on the child's paternal side but fails to inquire of the paternal grandfather?" (*In re Bella L.* (2026) 117 Cal.App.5th 1284, 1286.) We held that it was, and affirmed the order terminating parental rights. (*Ibid.*)

Our conclusion here is similar. The record contains sufficient evidence from which the juvenile court could conclude that the Department complied with its initial duty of inquiry and that ICWA was inapplicable. Throughout the course of the proceedings, the Department inquired about the children's potential Indian heritage from the following family members: mother, father, six paternal aunts, two paternal uncles, paternal grandmother, paternal great-aunt, paternal great-grandmother, one maternal aunt, and maternal grandmother—all of whom expressed no reason to believe the children might have Indian heritage.

On the maternal side, the Department was informed by mother, maternal aunt, and maternal grandmother that there was no Indian heritage. Although there is no record of the Department having asked maternal grandfather about Indian heritage, the lack of such an inquiry does not render the Department's otherwise diligent and well-documented efforts unreliable or the juvenile court's finding that ICWA did not apply unworthy of our deference. (See *In re Dezi C., supra,* 16 Cal.5th at p. 1141 [""""On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case""""]; *In re E.W.* (2023) 91 Cal.App.5th 314, 323 [affirming

7

ICWA finding where failure to interview additional relatives did not "cast[] any doubt on the reliability of the answers already obtained from the parents and relatives"].)  On this record, we conclude that conditional remand for further ICWA inquiry is not warranted.

C.    *Paternal Grandfather*

Although the record shows in other places that paternal grandfather is deceased, father points to two references to "PGF" in the December 12, 2024, interim review report to suggest that paternal grandfather may be alive and was not contacted.  For the reasons explained below, we conclude the reference to "PGF" was a typographical error.

On September 7, 2023, mother disclosed to a Department social worker that in the past, the paternal grandmother, paternal grandfather, and two paternal aunts cared for the oldest child, D.E. (born in January 2015) and "[D.E.] struggled when his paternal grandfather passed way and sought his aunt for comfort."

Child and family team meeting notes dated August 25, 2023, indicate that paternal great-aunt Z.E. explained father (born in October 1994) "has had a difficulty [*sic*] upbringing with the loss of his father and no contact with his mother."

In its December 12, 2024, interim review report, the Department reported that a social worker had spoken to mother on November 6, 2024, about the necessity of her court-ordered visits with the children being monitored.  "[Mother] stated that she would ask MGM and MGF."  The report stated that on November 18, 2024, mother asked if a social worker could monitor the visits because she was uncomfortable with the

8

paternal relative caregivers monitoring the visits. "It was reported that MGM could start monitoring and that PGF [*sic*] can also be a monitor." The report also stated that mother had informed the Department on November 6, 2024, that "the land lord [*sic*] would not allow MGM and PGF [*sic*] to move into the home."

Given the context of the conversation in which mother was suggesting monitors other than paternal family members, the coupling of "PGF" with maternal grandmother, and the fact that mother and paternal great-aunt had previously reported, respectively, that D.E. and father struggled with the death of paternal grandfather, we conclude that record supports a reasonable inference that the reference to "PGF" is a mistaken reference to "MGF"; the report is referring to mother's parents, the children's maternal grandmother and maternal grandfather. The Department, therefore, was unable to inquire of paternal grandfather and did not violate its duty in that respect. But even assuming paternal grandfather were alive, we would find the Department did not violate its duty under ICWA for the same reasons it did not violate its duty with respect to failure to inquire of maternal grandfather. (See *In re Bella L.*, *supra*, 117 Cal.App.5th 1284, 1290.)

## IV.  DISPOSITION

The juvenile court's order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.